In re HUGILL.

(District Court, N. D. Ohio, E. D.    April 1, 1900.)

BANKRUPTCY—LIENS—FRAUDULENT MORTGAGE.

Where a debtor, apprehending the recovery of damages against him in a suit for negligence, and intending to deceive the plaintiff therein and protect his property from execution, gave his note to one of his creditors for a sum largely in excess of the amount honestly due, and secured the same by a chattel mortgage covering all his personalty, and such creditor, with knowledge of the facts, recorded the mortgage, and filed an affidavit that the entire amount of the note was justly due, and the debtor afterwards became bankrupt, *held*, that the mortgage could not be enforced as a lien against the bankrupt's property, even to the extent of the original bona fide claim; the whole transaction being vitiated by fraud.

In Bankruptcy.   On review of decision of referee in bankruptcy. The certificate of the referee was as follows:

This matter came on to be heard upon issues, pertinent to the proceedings, arising upon the hearing on the trustee's application for leave to sell, free from liens, property belonging to bankrupt's estate.   The property consists of chattels.   The firm of Cooper Bros. filed proof of claim in the sum of $284.38, including interest, as corrected at the hearing, and now claim a lien for the same by reason of a chattel mortgage on bankrupt's property.   The validity of this lien is contested by the trustee and some of the creditors.   The facts in this matter, as shown by the evidence, are as follows:   During the month of August, 1898, George C. Hugill became indebted to Cooper Bros. for ·brick in the sum of $320.64.   On September 14, 1898, Hugill gave the Cooper Brick Company, under which name Cooper Bros. appear to have been acting at that time, his note, payable in 30 days, for $200, and a check on the Second National Bank in Akron for $120.64, in settlement of said account for brick.   The check was not paid when presented.   On Sunday, September 18, 1898, William Cooper, one of the said firm, called on George C. Hugill to urge payment of the indebtedness.   Hugill told him of a washout that had occurred on some job of work which he was doing as a contractor, and that considerable damage had been done to the property of the Valley Railway Company, and he feared that he might be liable in damages for the same. Hugill and Cooper talked the matter over, and Hugill advised with Cooper (so Hugill testifies) as to what could be done.   Hugill told Cooper he had no money, but that he would give him a mortgage to secure the claim, for he thought the railroad company would hold him in damages.   Cooper agreed to this, and, at his suggestion, took Hugill to see Cooper's attorney.   The matter was then discussed, resulting in the drafting on that Sunday by Cooper's attorney of a chattel mortgage on all of Hugill's chattel property to secure the payment of a promissory note in the sum of $2,500 made to William Cooper.   Both the note and mortgage were dated September 17, 1898.   Hugill signed both of these documents.   There was no other consideration for said note than the indebtedness due to Cooper Bros.   The note was made of the amount indicated in order to protect Hugill against any claims growing out of the damages for which he might be liable by reason of the washout on the Valley Railroad.   The following paper was executed and delivered to Hugill by William Cooper at that time:

"Akron, O., Sept. 17, 1898.

"That whereas I, George C. Hugill, have given a chattel mortgage calling for the sum of $2,500.00, and a note of even date:   Now, I, William Cooper, hereby agree to release the mortgage and give up' the note at any time that George C. Hugill, or his representatives, may call for the same; and, in case of my death, I request that my heirs do the same."

Both Hugill and Cooper testified that there was an understanding between them by which, notwithstanding said agreement, Hugill was not to assert his

right thereunder until the brick account of Cooper Bros. was satisfied. William Cooper made affidavit, which is contained on the back of said mortgage, swearing that the property described in said mortgage was conveyed to him on the 17th day of September, 1898, to secure the payment of $2,500, and that there was justly due and unpaid of said sum the sum of $2,500. This affidavit purports to have been made on September 17, 1898. The evidence shows that it was made after that date. The mortgage was duly filed with the recorder of Summit county on Monday, September 19, 1898, at 3:15 a. m. On September 16, 1899, William Cooper made affidavit on said mortgage that there was due him, of said sum, $2,500, and that the same was unpaid. Said mortgage was refiled September 16, 1899, at 11:55 a. m. The claimants, Cooper Bros., on the hearing admitted that there was no more than $320.64 due to the Cooper Brick Company at the time said mortgage was given; that said Hugill had not become indebted to them in any other sum since, other than for interest; and that there was no other consideration for the note of $2,500 above described. They only asked that the mortgage lien be held valid as to $284.38, the amount of the original indebtedness from George C. Hugill to the Cooper Brick Company, plus interest, and less a bill for coal sold by Hugill to said brick company.

It is evident that the note for $2,500, and the mortgage to secure the same, were made and delivered for the purpose of incumbering the property of George C. Hugill to such an extent that creditors could not subject it to the payment of their claims. The result or the transaction between Hugill and Cooper was the incumbering of Hugill's property by chattel mortgage, to hinder, delay, and defraud the creditors of Hugill. This transaction was therefore not only unlawful on general principles (9 Am. & Eng. Enc. Law, 882, note 4, and cases there cited), but was especially so according to the statutes of Ohio (section 6344). It is an elementary principle that when the immediate object of an agreement is unlawful the agreement is void, and this would be so whether the unlawful intention is common to both parties, or is entertained by one of the parties to the knowledge of the other. Pol. Cont. 318. And it is equally true that, if any part of an entire consideration is unlawful, the whole agreement is void. Applying this to the note, it is clear that the note is void, though an action might be maintained for any balance due on the original account for brick. Widoe v. Webb, 20 Ohio St. 431; Pol. Cont. 318. Counsel for Cooper Bros. have cited Selser v. Brock, 3 Ohio St. 302, in support of their contention that there was a simple failure of consideration. The court in that case explain why a usurious contract is not void, because the Ohio statute fixing the rate of interest is not a statute against usury. We fail to see where that case supports their position. Furthermore, there is reason to infer that the whole consideration in the Hugill note was unlawful. Though it was contended that the $2,500 was to include the brick account, yet they overlooked the fact that there was a 30-day note given 4 days before this transaction, for $200, to Cooper Brick Company, and a check for $120.64 to the same firm, in payment of the brick account. These do not appear to have been surrendered to Hugill. Still another very significant fact is this: That the $2,500 note was given to William Cooper, as was also the mortgage to secure it; and yet Cooper Bros. file a claim with the referee for the brick account, totally ignoring their contention that the account was a part of the consideration for the note for $2,500 given to William Cooper, and also ignoring the note for $200 given to Cooper Brick Company in part payment of the account. It is unnecessary to attempt any further explanation of the transaction; for, taking the position assumed by Cooper Bros. in this hearing, there can be no other conclusion than that the note given to William Cooper is void. Hence the chattel mortgage is likewise void. Any security for the payment of money under an unlawful agreement is void, and this would be so even if the giving of the security was not a part of the original transaction. Pol. Cont. 323, 324; Fisher v. Bridges, 2 El. & Bl. 118; 22 Law J. Q. B. 270, 23 Law J. Q. B. 276, 3 El. & Bl. 642; Geere v. Mare, 2 Hurl. & C. 339, 33 Law J. Exch. 50; Clay v. Ray, 17 C. B. (N. S.) 188. Two notes given by compounding debtor to a creditor for a sum in excess of the amount of the composition. Judgment was obtained on one of these notes. In consideration of proceedings being stayed and the notes given up, a third per-

son gave a guaranty to the creditor for the amount. It was held that on this guaranty no action could be maintained. Following case also supports this rule: Dewitt v. Brisbane, 16 N. Y. 508. In McQuade v. Rosecrans, 36 Ohio St. 442, on page 447, the court says, "If a part of the consideration of each note was illegal, the effect would be the same as if the entire consideration were illegal, and such effect would be to render the mortgage void." The whole transaction between Hugill and Cooper was to place the property beyond the reach of creditors. If Cooper Bros. had been given this chattel mortgage security at that time for their account in this case, the preference could stand, even though it deprived other creditors of a right to participate to that extent in the distribution of Hugill's property. It, however, was fraudulent as to other creditors, for them to receive a mortgage to secure a note given for a sum eight times greater than their account. Butler v. Stoddard, 7 Paige, 103, 20 Wend. 507. Where one of the purposes of a mortgagor and mortgagee is to deter the mortgagor's creditors from attaching the mortgaged property, the mortgage is wholly void as to those creditors, although the principal purpose of the parties is to secure a bona fide debt of the mortgagor. Crowninshield v. Kittridge, 7 Metc. (Mass.) 520. Jones, Mortg. § 627, cites this latter case in support of the proposition that if one of the purposes of making a mortgage was to put the property out of the reach of the mortgagor's creditors, although the principal purpose of the parties was to secure a bona fide debt of the mortgagor, it is nevertheless void as to his creditors. Numerous other cases are there cited in support of that proposition. The note and mortgage of George C. Hugill to William Cooper are accordingly held void, and not a lien upon the property of said Hugill. The claim of Cooper Bros., as general creditors, is allowed in the sum to which it was reduced at the hearing.

J. V. Welsh, for petitioners.
Otis & Otis, for bankrupt.

RICKS, District Judge. This case is certified to the court by the referee; the trustee having made application for leave to sell, free from liens, property belonging to the bankrupt's estate. The firm of Cooper Bros. filed proof of claim in the sum of $284.38, including interest as corrected at the hearing, and now claim a lien for the same by reason of a chattel mortgage on bankrupt's property. The validity of this lien is contested by the trustee and some of the creditors. The contention of counsel for Cooper Bros. is that, as part of the consideration for the note and chattel mortgage was valid, said instruments were merely voidable, and that, as between them and their creditors, they are entitled to have them participate in the distribution to the extent of the valid part of their claims. They cite several cases in Ohio, all of which show that there was, throughout the transaction, no attempt at fraud. But in this case there was fraud from the beginning. Hugill, through his timidity, fearing a damage suit by the Valley Railroad Company, was quite willing to make any disposition of his property that would defeat that company in this possible litigation, and protect him. The chattel mortgage and note, although given for $2,500, were in fact given for $320.64. Affidavit was made that this full amount was due. Said chattel mortgage was recorded as the statutes of Ohio direct. It served its purpose to mislead and deceive the creditors of Hugill. It is no answer to this to say that no one lost anything by this transaction. It is sufficient to look to the motive and purpose of the maker of the note and mortgage, to see what his intent was, which was evidently to hinder and delay his creditors. I think

the referee was correct in his conclusions that the instruments were fraudulent, and that the holders thereof ought not to participate to any extent in the distribution of this bankrupt's estate.